UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:05-CV-P50-M

ANTHONY NEFF                                                                 PLAINTIFF

v.

PATRICK BOWZER, et al.                                                    DEFENDANTS

### MEMORANDUM OPINION

Plaintiff, Anthony Neff, *pro se*, seeks legal and equitable relief, under 42 U.S.C. § 1983, from nineteen government officials or employees, in their individual and official capacities, and two private-practice physicians, for the alleged deliberate indifference to a serious medical need. This matter is before the Court for screening, pursuant to 28 U.S.C. § 1915A. Although Plaintiff relates a harrowing account of denied, delayed, and marginal medical care provided within the confines of several correctional facilities, the complaint falters over four legal hurdles: the state-action requirement, the statutes of limitations and exhaustion of administrative remedies, and the notice-pleading requirement.  The Court will therefore dismiss most of this action for failure to state a claim on which relief may be granted, pursuant to § 1915A(b).  The remainder of the complaint, which improperly mixes exhausted with unexhausted claims, the Court will dismiss with leave to refile, unless of course Plaintiff's administrative remedies afford him sooner relief.

### I.

When a prisoner commences a civil action against a government entity, officer, or employee, the district court must review the complaint, before service of process on the defendants, to identify "cognizable claims" and to dismiss any portion of the complaint if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A;  *McGore v.*

*Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997).

The district court must liberally construe the allegations in a light most favorable to the plaintiff and accept all factual allegations as true. *Prater v. City of Burnside*, 289 F.3d 417, 424 (6th Cir. 2002). The district court better serves "substantial justice" by examining the "thrust, not just the text," of *pro se* litigants' allegations. *Burton v. Jones*, 321 F.3d 569, 573-74 (6th Cir. 2003). Although the court holds *pro se* pleadings to a less stringent standard than formal pleadings drafted by lawyers, the district court is under no duty to conjure up unpled allegations. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)); *see also Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).

A complaint fails to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). The complaint must contain more than bare legal conclusions. *Lillard v. Shelby County Board of Education*, 76 F.3d 716, 726 (6th Cir. 1996). The complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988).

## II.

Plaintiff suffers from recurrent, symptomatic urethral stricture disease, secondary to a childhood straddle injury. When Plaintiff has experienced a recurrence of a stricture – or, a narrowing of the urethra – his symptoms have included bloody urine and pain with difficulty urinating. Since his arrest and incarceration in February 2002, Plaintiff has undergone five surgical procedures, namely, cystoscopy (insertion of a fiber-optic viewing tube) and dilation, to

alleviate strictures causing as much as a 90% closure of the urethra.

In an eighteen-page complaint with seventy-five pages of attachments, Plaintiff describes futile efforts to obtain urgent medical care for a diagnosed medical condition, not merely a subjective medical complaint.  Plaintiff's allegations implicate every custodian from the time of arrest to present, as a state inmate in five different facilities, over a three-year period.[1]

His account, particularly of events in 2003 while incarcerated in the Luther Luckett Correctional Complex, is compelling.  Plaintiff states:

> Plaintiff, in substantial and chronic pain, unable to urinate for two or three days at a time until he forced and strained himself to urinate, which caused him to develop hemorrhoids and caused Plaintiff to excrete in his underclothes[, in] desperation and overwhelmed with anxiety, wrote Vertner L. Taylor (Commissioner of the Kentucky Dept. of Corrections), Larry Chandler (Warden

---

[1]  Plaintiff alleges he was arrested and initially detained in two county jails as a state inmate because of a probation violation, first in the Campbell County Detention Center on February 6, 2002.  There, Plaintiff alleges an outright denial of medical attention, because of his status as a state inmate, for complaints of pain and difficulty urinating with a history of surgery for the same complaints.

Plaintiff was transferred to the Hart County Jail on April 4, 2002.  On or about May 6, 2002, Plaintiff presented to Dr. Paul York, at the T.J. Sampson Community Hospital for the first surgery during his incarceration for a urethral stricture.  According to Plaintiff, he received this care only because he was able to provide his own insurance card.  Plaintiff alleges Dr. York opined that he received poor medical care at Campbell County particularly by their failure to conduct an adequate history and examination from which jail medical personnel would have known that Elavil (an antidepressant) is contra-indicated for Plaintiff's condition.

On June 3, 2002, Plaintiff was transferred to the Roederer Correctional Complex.

One month later, on July 3, 2002, Plaintiff was transferred to the Kentucky State Reformatory.  By October 20, 2002, Plaintiff's symptoms recurred.  Plaintiff alleges a number of omissions on the part of medical personnel there.  Plaintiff alleges he needed to be catheterized, but received no medical care for his symptoms.

Plaintiff was transferred to the Luther Luckett Correctional Complex on December 2, 2002.  Plaintiff alleges he explained his condition to Nurse Riley, who said there was no doctor on site and that he would have to wait for medical attention.  Plaintiff was placed in the specialized management unit in January 13, 2003, still having received no attention to his medical need.  Plaintiff implies this was a punitive classification and alleges he was refused medical treatment due to this classification.  At this point, Plaintiff wrote a letter, quoted in length above, to corrections officials.  On May 1, 2003, Plaintiff was referred to urologist, Dr. Brooks Jackson, who performed the second surgery during Plaintiff's incarceration to alleviate an 80% blockage of the urethra.  Plaintiff alleges he complained of another recurrence to Dr. Jackson on August 24, 2003 to no avail.

On August 28, 2003, Plaintiff was transferred to the Kentucky State Penitentiary.  On September 4, 2003, Dr. H.S. Jackson, urologist, diagnosed a 75% closure and performed surgery – Plaintiff's third during his incarceration – the same day.  On December 31, 2003, Plaintiff's symptoms recurred.  He waited until February 16, 2004 to see Dr. H.S. Jackson, who again performed Plaintiff's fourth surgery this date.  Plaintiff's symptoms recurred on March 15, 2004.  Dr. H.S. Jackson ordered a catheter with plug and finally on April 5, 2004, performed Plaintiff's fifth surgery.  This action ensued.

Luther Luckett Correctional Complex), Rhonda Coleman (Head Nurse, Luther
Luckett Correctional Complex), and Deputy Warden D. W. Mugavin (Kentucky
State Reformatory).  Plaintiff received no relief.

Also, Plaintiff submitted sick call requests **every day**, filed grievance
upon grievance (which weren't even acknowledged or recorded ) as well as
pleaded with **everyone** who would listen to him about his suffering and dire need
for medical HELP: Unit Administrators, Case workers CTOs, Correctional
officers, and Medical Staff.  No one would do anything about the Plaintiff's
desperate cries for help and medical attention.

Plaintiff could do nothing but suffer the excruciating and unbearable pain
from not being able to urinate, which in direct result caused the Plaintiff other
unnecessary medical and mental problem[s] – (the Plaintiff is already diagnosed
as being mentally ill): hemorrhoids, anxiety, stress, insomnia, as well as undue
embarrassment from Plaintiff's excreting on himself and the leakage of urination
(from an overfull bladder) in his clothes.  This is clearly deliberate indifference to
serious medical needs of the Plaintiff ... .

(Compl. at *13, emphasis original, paragraph format added.)

Plaintiff names eighteen officials and medical personnel at the Kentucky Department of

Corrections ("DOC"), the Luther Luckett Correctional Complex, the Kentucky State

Reformatory, the Kentucky State Penitentiary, the Green River Correctional Complex, the Hart

County Jail, and the Campbell County Detention Center.  Plaintiff also names two treating

physicians who are apparently in private practice, Dr. M. Brooks Jackson, Tri-County Baptist

Hospital, LaGrange, Kentucky, and Dr. H.S. Jackson, Medical Arts Building, Murray, Kentucky.

Plaintiff seeks compensatory and punitive damages.  He also seeks to enjoin the DOC to

provide a surgical procedure (not specified in the complaint) that, Plaintiff alleges in the opinion

of Dr. H.S. Jackson, would give him longer relief.  Plaintiff explains the DOC refuses to provide

this treatment because they consider it to be an elective procedure.

He is currently incarcerated at the Western Kentucky Correctional Complex, a state

facility.  Plaintiff believes the DOC is transferring him frequently to avoid providing necessary

medical care.

4

## III.

Section 1983 states, "Every person who, under color of [law], subjects ... any [person] to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured ... ." Congress enacted this statute to create a civil remedy for individuals who have suffered injury from the conduct of government officials acting in violation of federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983, itself, creates no substantive rights but, rather, affords a remedy to rights established elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). The major elements of a § 1983 claim can be summarized as: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978); *Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).

**A.  State Action:  Defendants Brooks Jackson and H.S. Jackson**

Plaintiff seeks relief from two urologists, Dr. Brooks Jackson and Dr. H.S. Jackson, who are not physician-employees of the state DOC. An essential element of § 1983 is the color-of-law requirement: an injured party has a right of action against either a government official or person acting in behalf of state or local government. *Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). "The central question to be answered in determining whether a private party is a "state actor" is whether their actions are "fairly attributable to the state." *Id.* at 351. An elementary principle of constitutional law is that "most rights secured by the Constitution are protected only against infringement *by governments*. ... Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. It also avoids imposing on the State, its agencies or officials,

5

responsibility for conduct for which they cannot fairly be blamed." *Lugar v. Edmondson Oil Co.*, 457 U.S. 829, 936 (1982) (emphasis added).

Here, Plaintiff includes two private-practice physicians as party-defendants, without alleging any facts to support an inference that their treatment decisions should be attributed to the state.  The suggestion that these physicians have provided only stop-gap care due to the state's refusal to pay for a more expensive treatment fails to transform the private nature of the physician-patient relationship.  It simply stretches the bounds of the state-action requirement to hold a private physician amenable to suit under § 1983.  The Court will therefore dismiss the complaint against Defendants Brooks Jackson and H.S. Jackson, for failure to state a claim on which relief may be granted.

## B.  Statute of Limitations:

### 1.  County Officials – Defendants Buckler and Cartmill

Plaintiff seeks relief against two county jailers, who were his custodians at the outset of his incarceration, from February to June, 2002.  He alleges an absolute denial of medical treatment while detained in the Campbell County Jail and sues the jailer, Greg Buckler.  During his detention in the Hart County Jail, Plaintiff's requests for medical care, he alleges, were denied until he presented his own insurance card; he sues the jailer, Bill Cartmill.  Plaintiff further alleges grievance procedures were not available in either jail.  He lodges this complaint against Defendants Buckler and Cartmill almost three years after transfer from their custody.

A one-year statute of limitations applies to § 1983 actions.  *See Owens v. Okure*, 488 U.S. 235, 251 (1989) (holding § 1983 borrows the forum state's statute of limitations for personal injury actions); *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990)

6

(holding that a one-year statute of limitation, K.R.S. 413.140(1)(a), applies to § 1983 actions); *see also Brown v. Morgan*, 209 F.3d 595 (6th Cir. 2000) (holding that the period during a which a prisoner exhausts administrative remedies tolls the one-year statute of limitations).

Because Plaintiff seeks relief against these county officials more than one year after his cause of action accrued, these claims are time-barred and the Court will dismiss them for failure to state a claim on which relief may be granted.

Plaintiff further asserts a state law claim of fraud; Plaintiff disputes medical and insurance related charges to his inmate account at the Hart County Jail.  The Court declines to exercise supplemental jurisdiction over this claim, however, pursuant to 28 U.S.C. § 1637, because of the dismissal of the federal claims.

**2.  State Officials – Defendant Sweat, Luther Luckett Defendants, Defendant Taylor, and Reformatory Defendants**

At the time of Plaintiff's transfer from the Campbell and Hart county jails into state institutional confinement, beginning in June 2002, the Kentucky Corrections Policies and Procedures exempted medical complaints from its grievance procedures.  *See* 501 KAR 6:020, Kentucky Corrections Policy and Procedure 14.6, (compare versions effective Nov. 2000 and effective July 17, 2003 – listing medical decisions as non-grievable – to the version effective May 24, 2004 – listing health care concerns as grievable).  Thus, these early state officials stand in similar stead to the county officials in terms of calculating the limitations period.  Without an available grievance process to toll the limitations period, Plaintiff claims became time-barred one year after they accrued.

Plaintiff was first placed at Roederer Correctional Complex, from June to July 2002.

Plaintiff names its warden, Doug Sweat, as a Defendant.  Plaintiff's deliberate indifference claim became time-barred by July 2003, more than twenty months before filing this action.  Likewise, the one-year limitations period for Plaintiff's deliberate indifference claims against officials at the Kentucky State Reformatory, where he was detained from July 2002 to December 2002, expired more than fifteen months before filing the present action.  Plaintiff filed this complaint seven months after expiration of the one-year limitations period for the deliberate indifference claims against officials at the Luther Luckett Correctional Complex, where he was detained from December 2002 through August 2003.

The Court will therefore dismiss on statute-of-limitations grounds, for failure to state a claim on which relief may be granted, the claims against the following Defendants: Doug Sweat, Larry Chandler, D. W. Maguvin, Greg Brandenburg, Rhonda Coleman, Doug Crall, Puckett Riley, and William Seabold.

## C.  Conclusory Allegations:  DOC and Penitentiary Defendants

In the complaint, Plaintiff understandably casts a wide net in his effort to hold someone accountable for his medical predicament.  The Court's duty to construe a *pro se* complaint liberally, however, does not absolve a plaintiff of the duty to comply with the Federal Rules of Civil Procedure by providing each defendant with fair notice of the basis of the claim. *Sweikiewicz v. Sorema*, 534 U.S. 506, 514 (2002).

The complaint must contain more than bare legal conclusions. *Lillard v. Shelby County Board of Education*, 76 F.3d 716, 726 (6th Cir. 1996).  To state a claim for relief under § 1983, the plaintiff must allege how each defendant was personally involved in the acts about which the plaintiff complains.  *Rizzo v. Goode*, 423 U.S. 362, 375 (1976).  "It is not enough for a complaint

... to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law.  Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).  This means the plaintiff must "allege 'with particularity' all material facts to be relied upon when asserting that a governmental official has violated a constitutional right."  *Terrrance v. Northville Reg'l Psychiatric Hosp.,* 286 F.3d 834 (6th Cir. 2002).  The Court is not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Here, the complaint lacks the requisite specificity in stating the factual basis for claims against several DOC and Penitentiary Defendants.  First, the complaint contains no factual allegations that pertain to Defendants Ron Everson, M.D. or Vigayakshmi Hao, M.D., listed on the summonses as officials of the Kentucky Department of Corrections.  Their names appear in grievance documentation attached to the complaint on an attendance sheet indicating these physicians comprised the health care grievance committee of April 16, 2004.  (The committee found "the patient has been and continues to be seen in regard to a urethral stricture.")

Second, the complaint contains no factual allegations that pertain to Defendants Steven White, M.D., or James Van Nort, Psy.D., also listed on the summonses as officials of the Kentucky State Penitentiary.  Their names also appear as members of the health care grievance committee of May 27, 2004.  (This committee made essentially the same finding.)

Third, the grievance documentation bears the name of Defendant Doug Crall, M.D., as Interim Medical Director, denying Plaintiff's appeal of the May 27th committee's findings.  This

documentation also includes two cover letters, dated April 21, 2004 and June 4, 2004, authored by Defendant Patrick Bowzer, RN, MSSW, Nurse Consultant Inspector, enclosing grievance dispositions.  There are no factual allegations that pertain to their involvement in the grievance process.[2]

Fourth, the complaint includes no mention of Defendant C. Hiland, ARNP, Kentucky State Penitentiary, unless this name appears in the exhibits like the proverbial needle in a haystack.

Absent other details, the Court can only guess at the basis of the claims against these Defendants.  As committee members or grievance officials rather than treating physicians or other medical providers, their involvement might implicate a due process interest rather than a right against deliberate indifference.  The complaint is silent, however; and the Court will not speculate.  Because the complaint omits allegations how each Defendant enumerated above was personally involved in depriving Plaintiff of a federal right, the Court will dismiss the complaint against them, for failure to state a claim on which relief may be granted.

**IV.**

Although the complaint contains averments specific to the three remaining Defendants at different periods during his incarceration,[3] the details of these allegations fall short of articulating what appears to be the gravamen of the deliberate indifference claims:  that

---

[2]  In section III.B.2 of this Memorandum Opinion, the Court addresses Dr. Crall's other involvement in this action as a treating physician at the Luther Luckett Correctional Complex.

[3]  Plaintiff seeks relief from a Penitentiary physician, Steve Hiland, M.D.; another correctional physician, Rizalino Rafi, M.D., of the Green River Correctional Facility; and the former commissioner of the DOC, Vertner Taylor, in their official and individual capacities.  The complaint contains requests for damages and injunctive relief.

Defendants continue to classify as elective other surgery recommended by Dr. Jackson, urologist, of Murray, Kentucky, despite how frequently Plaintiff suffers painful recurrences of urethral strictures (five recurrences over a three year period).  Plaintiff states:

> This medical condition ... could have been resolved and even prevented long ago had one of the more permanent surgeries been performed and therefore the Plaintiff would not have been forced to endure the chronic, substantial and intense pain.  Further, the Plaintiff would have been spared the embarrassment and humiliation from soiling himself and urinating on himself.

On the merits of a deliberate indifference claim, prisoners typically face a high hurdle. Although deliberate indifference to the serious medical needs of a prisoner constitutes an unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, a medical decision whether a particular form of treatment is indicated does not represent cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 104, 107 (1976).  The Eighth Amendment neither guarantees that prisoners will have unqualified access to health care, *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor imposes a duty equivalent to state-law liability for medical malpractice, *Estelle*, 429 U.S. at 106.

A violation of the Eighth Amendment occurs when the medical treatment at issue is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002) (citing *McElligott v. Foley,* 182 F.3d 1243, 1255 (11th Cir. 1999) for the proposition that a decision to take an easier but less efficacious course of treatment may constitute deliberate indifference).

The merit in Plaintiff's deliberate indifference claim, therefore, lies in an adjudication whether the complaint alleges conscience-shocking inadequacy on the part of his treating

11

physicians or the DOC medical administrator given Plaintiff's medical history of excruciating delays and the indignity of his current predicament – an account that troubles the conscience of those having hardened sensibilities.

The Court's review of the merits is regrettably constrained today, however, by precedent that prohibits prisoners from bringing a complaint that contains both administratively exhausted and unexhausted claims.  *See Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005).

When a prisoner challenges the conditions of his confinement under federal law in a civil action for damages, the Prison Litigation Reform Act, 42 U.S.C. § 1997e,  first requires the prisoner to exhaust all administrative remedies available.  *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (Congress afforded corrections officials the opportunity to address complaints internally to improve prison administration and to facilitate judicial review by creating an administrative record that "clarifies the contours of the controversy."); *Baxter v. Rose*, 305 F.3d 486, 488 (6th Cir. 2002); *see also Booth v. Churner,* 532 U.S. 731, 741 (2001) (holding exhaustion of administrative remedies is mandatory, even if the inmate believes it would be futile).

If the suit seeks relief from more than one prison official, the inmate must exhaust administrative remedies against each institutional defendant on each claim.  *Burton v. Jones*, 321 F.3d 569, 574-75 (6th Cir. 2003); *see also Boyd v. Corrections Corp. of America*, 380 F.3d 989 (6th Cir. 2004) (holding a case involving multiple claims and multiple defendants requires an individualized exhaustion analysis).  A grievance statement satisfies the exhaustion requirement if it "gave the prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint."  *Burton*, 321 F.3d at 575; *Thomas v. Woolum*, 337 F.3d 720 (6th Cir. 2003); *see also*

12

*Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000) (stating that "a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describ[ing] with specificity the administrative proceeding and its outcome.").

Here, Plaintiff has included in the complaint at least one unexhausted claim: that treating physician, Dr. Rafi, displayed deliberate indifference for failure to treat a urethral stricture. Further, the only mention of the DOC Commissioner, formerly Vertner Taylor, appears in the grievance documentation from Luther Luckett in 2003.  Yet, the complaint contains allegations that Plaintiff seeks relief against the commissioner in his official capacity, which is another way of pleading suit against the DOC, an arm of the state of Kentucky.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

This illustrates the point that at the core of Plaintiff's complaint is a request for injunctive relief for a specific and more efficacious surgery.  Such an official-capacity claim (for injunctive relief) may properly lie against a current prison, treating physician (a practical difficulty because of frequent and, as Plaintiff alleges  suspect, institutional transfers), or better still a DOC decision-maker (apparently the DOC commissioner) who classifies treatment other than simple catheterization or cystoscopy and dilation as unnecessary or elective.[4]

Therefore, to avail himself of federal court remedies, Plaintiff must file a grievance that requests specific relief (for example, damages and/or state provision of a specific and more permanent surgical procedure) and that names specific individuals, including any current treating physicians and DOC officials, on any deliberate indifference claims that are not dismissed with

---

[4] Section 1983 provides a damages remedy against state officials only in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

prejudice herein, including any specific allegations of treatment delays, refusals to treat, grossly inadequate treatment, and deliberately indifferent application of any DOC medical policies. Plaintiff must complete all steps of the DOC's grievance process, including all appeals.  If Plaintiff is denied relief, he may then file a complaint against those individuals specified in the grievance on claims detailed in the grievance.  Federal review of his complaint may then proceed in accordance with § 1997e.

## V.

In summary, the Court will dismiss with prejudice, for failure to state a claim on which relief may granted, the complaint against all Defendants except those claims against Defendants Hiland, Taylor, and Rafi – these claims will be dismissed without prejudice for failure to allege exhaustion of available administrative remedies.  Plaintiff may refile his claim absent a change in circumstances or in the event the administrative process still leaves him in need of a judicial remedy.

The Court will enter an Order consistent with this Memorandum Opinion.

Dated:

cc:     Plaintiff, *pro se*
        Defendants Hiland, Taylor, and Rafi
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel

4414.007